---

### In re YORK et al.

(District Court, N. D. Texas, Fort Worth Division.    September 20, 1926.)

Bankruptcy ⬂44—Partnership cannot be adjudged bankrupt on voluntary petition of one or more partners without consent of all (Bankruptcy Act, § 5, par. [h], being Comp. St. § 9589).

Under Bankruptcy Act (Comp. St. § 9585 et seq.), particularly in view of section 5, par. (h), being Comp. St. § 9589, a partnership cannot be adjudged a bankrupt on a voluntary petition filed by one or more partners without the consent of all.

In Bankruptcy. In the matter of the petition of Arthur York and others to be adjudged bankrupt. Petition dismissed in part.

McCartney, Foster & McGee, of Fort Worth, Tex., for G. O. Bateman.

Frank S. Roberts and Benson & Dean, all of Breckenridge, Tex., for the bankrupt.

DAWKINS, District Judge. On August 23, 1926, there was filed in this court a petition, originally drawn as that of Arthur York, to be adjudged bankrupt, but, before being filed, there was interlined with pen the words, "and of York & Bateman, a partnership." It was alleged that petitioner and Geo. Orville Bateman, "are and have been partners, under the style of York & Bateman, * * * and that said partnership is insolvent and owes debts in excess of $1,000"; that the partnership and petitioner are willing to surrender its and his property for the benefit of creditors; that Bateman has the same residence, is not a wage earner or tiller of the soil, "and as an individual owes debts which he is unable to pay in full." There was attached what purported to be schedules of the assets and liabilities of York and the partnership. The

prayer was, "Your petitioners pray that such partnership and your petitioner as an individual be adjudged bankrupt within the purview of the bankruptcy law, * * *" and that notices be served upon Bateman, and that such proceedings be had as are provided by law and the orders of the Supreme Court.

The petition was filed in the Fort Worth division instead of at Abilene, within which the parties are domiciled. In the absence of the judges of the district, the matter was referred to the referee of the Fort Worth division, and upon communication from Bateman to the writer, who is acting in the absence of said judges, the referee was directed to hold the matter in abeyance so far as the partnership is concerned, to afford Bateman opportunity to be heard upon the question of adjudicating the partnership. There being no issue as to York, the individual, he was by the referee adjudged a voluntary bankrupt. At the hearing in Fort Worth on August 31, 1926, before the writer, Bateman filed a motion to dismiss the petition for voluntary adjudication of the partnership of York & Bateman, upon the grounds that, "in so far as the said petition purports to be in behalf of himself or of the said firm of York & Bateman, it was filed without his knowledge or consent;" further, that said petition sets forth no legal ground for adjudging either the firm or Bateman individually bankrupt, and that the same is unauthorized by the Bankrupt Act, and that Bateman, "as a nonconsenting partner of said firm, objects to such adjudication"; that he has at all times so objected, and was not consulted in the filing of said petition, although he could easily have been so consulted had it been desired. This motion was supported by the affidavit of Bateman.

On the hearing, leave was granted to the petitioner to demur or otherwise answer the motion, and on September 8, 1926, there was filed what is styled "Replication to the Motion of Bateman," in which York appeared "individually and in behalf of the partnership of York & Bateman," and demurred to the motion for the reason "that the same is wholly insufficient in law to require answer," and prayed that the same be dismissed. Appearer further excepted to said motion upon the grounds: (a) That "it is not affirmatively denied in said motion that the partnership or the individual members composing it are not (?) in truth in fact insolvent; (b) that it fails to affirmatively allege that Bateman was at the filing of the petition and is now solvent, able, and willing to pay the part-

nership debts; (c) that said motion fails to negative the material allegations of said petition, it being insufficient for him to make affidavit that the said petition was filed without his knowledge or consent." Further, in the name of the partnership, exception to the motion was made that (a) it does not allege the solvency of the said firm or the members thereof; (b) that it does not affirmatively allege that the said firm was not insolvent or that no acts of bankruptcy had been committed by it or the individual partners, but that the said partnership had committed an act of bankruptcy "by filing the above styled and numbered voluntary petition in bankruptcy, which then and there invested this court with authority and power to administer the estate of said partnership, and the mere ex parte affidavit of the non-assenting partner is not sufficient in law to overcome the supposition of said voluntary petition," but merely raises a question of fact to be determined upon proper hearing; and (c) that it is nowhere alleged that said partnership of York & Bateman did not exist, but is admitted, as alleged in the petition for adjudication. Appearer prayed that said exceptions be sustained.

The question presented is as to the right and power of one partner to file a petition for and have a firm adjudged a voluntary bankrupt, without the consent and against the protest of the other partner or partners.

It was generally supposed that the issue of bankruptcy of the partnership could be determined contradictorily as between the partners, under former General Order No. 8 of the Supreme Court, but that tribunal, in the case of Meek v. Centre County Banking Co. et al., 268 U. S. 426, 45 S. Ct. 560, 69 L. Ed. 1028, found that General Order No. 8 and the forms provided thereunder, were unauthorized by the bankruptcy law, and later revoked said order. It was held that there are only two ways of having a person (including partnerships under the present law) adjudged bankrupt—the one by voluntary petition, and the other involuntary at the instance of creditors—and that the latter method could not be employed in a controversy solely between partners with respect to the firm. That decision expressly declined to pass upon the question here involved as to whether or not one of the partners, or any number less than the whole, had the power to represent or join the partnership in a voluntary proceeding. But the reasoning and language used in disposing of that case in my opinion indicates rather strongly that, if

the issue were squarely presented, the Supreme Court would hold that no such power or authority exists.

The matter, therefore, seems to turn upon the power of a single partner, or any number less than the whole, to make a general assignment for the benefit of creditors. Under the common law, the rule, as laid down by Cyc., vol. 30, p. 520, verbo "Partnership," is as follows:

"13. *Assignment for the Benefit of Creditors.*—(a) In General. A general assignment of the firm property to a trustee for the benefit of the creditors of the firm is not a transaction in the ordinary course of the firm's business. On the contrary, it is usually made with a view to terminating the business and closing the partnership; it is incident to the destruction, not to the conduct, of the partnership business. Accordingly it is generally held that the partnership relation does not of itself impliedly confer upon a partner implied authority to make such an assignment on behalf of the firm. Actual authority must be shown; but the existence of such authority may be implied from circumstances or from the conduct of the partners. Thus, where a partner absconds under circumstances that show an intention to leave the business and its control to the remaining partner, or is a nonresident or permanently absent, his copartner being the sole manager, or abandons all attention to or control of the business, his copartner may make a general assignment for the benefit of the firm's creditors. And according to some of the cases one partner may make such an assignment where there is a crisis in the affairs of the business and his copartner cannot be communicated with in time to meet the emergency. But one partner has no right to make a general assignment because his copartner is temporarily disabled by sickness, or is temporarily absent. And such authority is not established by the mere fact that the assigning partner is the general manager or has a power of attorney to carry on the business of the firm."

See, also, Ex parte Hartz, 11 Fed. Cas. 723, No. 6174; Bowen v. Clark, Fed. Cas. No. 1721; 48 Am. Rep. 359, note.

Inasmuch as the filing of a voluntary petition in bankruptcy is, as against the partners individually, equivalent to a general assignment of the partnership property for the benefit of creditors, and amounts to a confession of judgment as to the debts placed upon the schedules, puts an end to the partnership, and would involve the individual estates of the partners under their solidary lia-

bility as such, I cannot conceive that any number less than all of the partners could legally take such a drastic step without the consent of the others, and certainly not over their objection.

The Bankruptcy Act of 1898 (Comp. St. § 9585 et seq.), differently from the former law, recognizes the partnership as a distinct entity, and in paragraph (h) of section 5 declares:

"h. In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt." Comp. St. § 9589.

It will be noted that this provision says nothing about the solvency of either the partnership or of the members other than the one who has been adjudged bankrupt. It seems clearly contemplated, therefore, that the bankruptcy of a partner should not necessarily draw into the jurisdiction of the bankrupt court the partnership affairs without the consent of the other partners. See Marnet Oil & Gas Co. v. Staley et al. (C. C. A.) 218 F. 45. It would therefore seem illogical to say that this result, which is expressly excluded by the bankruptcy law, could be accomplished by the bankrupt partner merely joining the partnership as a petitioner for adjudication without the consent of the other partners.

I am of the view that, not only is the showing made by Bateman in the motion to dismiss amply sufficient to justify the dismissal of the petition as to the partnership, but believe that, in order to justify a court of bankruptcy in making a voluntary adjudication of a partnership, it would be necessary, either that all of the partners join therein or that clear showing be made of their consent to such proceeding, or at least that the petition disclose the impossibility of their being joined, or of obtaining their consent, such as their having absconded, etc. See authorities above cited.

Entertaining this view, I think it unnecessary to refer the matter for the purpose of taking testimony upon the question of the authority of York, the want of which seems to be conceded in the brief in so far as the consent of Bateman is concerned.

For the reasons assigned, a decree may be prepared dismissing the petition for adjudication of the partnership.